UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                     'O'

| Case No. | 2:13-cv-07862-CAS-(JGx) | Date | July 21, 2014 |
|---|---|---|---|
| Title | SPRINT SOLUTIONS INC, ET AL. V. PACIFIC CELLUPAGE INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants | |
| Gail Podolsky | Martin Keleti | |

**Proceedings:**  MOTION TO DISMISS (Dkt. #52, filed June 16, 2014)

MOTION TO DISMISS (Dkt. #53, filed June 16, 2014)

## I.  INTRODUCTION

Plaintiffs Sprint Solutions, Inc. and Sprint Communications Company, L.P. (collectively, "plaintiffs" or "Sprint") filed this action on October 24, 2013, against defendants Pacific Cellupage, Inc. ("Pacific"), Yousef Saghian, Daniel Saghian, and Navid Davidian.  Dkt. #1.  The operative second amended complaint ("SAC") asserts claims for (1) unfair competition under California common law; (2) tortious interference with prospective economic advantage; (3) tortious interference with contractual relations; (4) civil conspiracy; (5) fraud; (6) fraudulent misrepresentation; (7) trafficking in computer passwords in violation of 18 U.S.C. § 1030(a)(6); (8) unauthorized access of protected computer networks in violation of 18 U.S.C. § 1030(a)(5)(C); (9) unauthorized access of computer networks with intent to defraud in violation of 18 U.S.C. § 1030(a)(4); (10) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (11) false advertising in violation of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A)-(B); (12) contributory trademark infringement; (13) conversion; and (14) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. Dkt. #50.  In brief, the SAC alleges that defendants are engaged in a scheme (the "Bulk Handset Trafficking Scheme") whereby defendants, in cooperation with other individuals, obtain Sprint phones, alter their software so that they can be used outside of the Sprint wireless network, and then sell them for use on other wireless networks.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-cv-07862-CAS-(JGx) | Date | July 21, 2014 |
|---|---|---|---|
| Title | SPRINT SOLUTIONS INC, ET AL. V. PACIFIC CELLUPAGE INC., ET AL. | | |

On June 16, 2014, Pacific, Daniel Saghian, and Yousef Saghian moved to dismiss the SAC's CFAA claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. #52. Navidian also filed a motion to dismiss on June 16, 2014.[1] Dkt. #53. Plaintiffs opposed both motions on June 23, 2014, dkt. #'s 54-55, and defendants replied on June 30, 2014, dkt. #'s 56-57. The Court held a hearing on July 21, 2014. After considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Plaintiffs allege that Sprint Solutions, Inc. is a Delaware corporation, with its principal place of business in Reston, Virginia, and that Sprint Communications Company, L.P. is a Delaware limited partnership, with its principal place of business in Overland Park, Kansas. SAC ¶¶ 9-10. Plaintiffs further allege that Pacific is a California corporation with its principal place of business in Los Angeles, California. Id. ¶ 11. Plaintiffs allege that Yousef Saghian and Daniel Saghian are residents of Los Angeles, California. Id. ¶¶ 12-13. Yousef Saghian is alleged to be the president of Pacific, and Daniel Saghian is alleged to be the owner of Pacific. Id. Navid Davidian is alleged to be a resident of Los Angeles, California, and a sales consultant for Pacific. Id. ¶ 14.

Sprint alleges that it sells wireless communications services, including wireless telephones ("Sprint phones"), to more than 56 million customers nationwide. Id. ¶ 19. Sprint's wireless services are sold though its retail stores as well as authorized dealers with whom Sprint has contractual relationships. Id. ¶ 20. Manufacturers that produce mobile phones for Sprint install proprietary software, requested and paid for by Sprint, that is designed to prevent Sprint mobile phones from being used outside Sprint's wireless network. Id. ¶ 23.

Sprint alleges that its mobile phones are sold subject to Terms and Conditions which restrict their sale and use. Id. ¶ 23. These Terms and Conditions include a statement that Sprint's "rate plans, customer devices, services and features are not for

---

[1] Navidian's motion incorporates by reference the arguments set forth in the motion filed by Pacific, Daniel Saghian, and Yousef Saghian, but does not assert any additional arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-07862-CAS-(JGx) | Date | July 21, 2014 |
| Title | SPRINT SOLUTIONS INC, ET AL. V. PACIFIC CELLUPAGE INC., ET AL. | | |

resale and are intended for reasonable and non-continuous use by a person using a device on Sprint's networks." Id. Ex. A at 2. Depending on the type of service and method of sale of Sprint's services, Sprint's customers may manifest their agreement to these Terms and Conditions in several ways, including signing a written contact, acknowledging their agreement orally over the telephone, or clicking buttons on a website. Id. ¶ 23. Additionally, Sprint alleges that, in the case of prepaid wireless services, customers sometimes indicate their agreement by purchasing a mobile phone in a package that conspicuously indicates that purchase of the phone constitutes agreement to these Terms and Conditions. Id. Sprint alleges that these Terms and Conditions constitute a valid and binding contract between Sprint and each of its customers. Id.

Sprint alleges that Pacific is a mobile phone and accessories bulk reseller that traffics in Sprint phones and provides "unauthorized unlocking services," even though none of defendants, including Pacific, is an authorized Sprint dealer or retailer. Id. ¶¶ 39-40. In this regard, Sprint alleges that defendants are fraudulently purchasing and reselling Sprint mobile phones in bulk quantities. Id. ¶ 36. Sprint alleges that defendants have posted online advertisements in furtherance of these activities. Id. ¶ 42. According to Sprint, defendants purchase Sprint mobile phones, either directly or through co-conspirators, and then arrange for them to be sold for a profit overseas, for use on wireless networks other than Sprint's. Id. ¶ 36. Sprint further alleges that the mobile phones are often "unlocked" in preparation for their use on foreign wireless networks. Id. The unlocking process involves removing or altering the proprietary software on the phones that prevents them from being used outside Sprint's wireless network. Id. ¶ 25. In addition, Sprint alleges that the unlocked mobile phones are often removed from their original packaging and all accessories, warranties, and manuals are removed. Id. ¶ 36. Sprint avers that, once a Sprint mobile phone is unlocked and shipped overseas, Sprint no longer has a revenue source to recoup the funds expended in subsidizing that mobile phone's purchase price. Id. ¶ 37. Sprint refers to defendants' alleged bulk purchasing and reselling of Sprint mobile phones and its associated "unlocking" activities as the "Bulk Handset Trafficking Scheme." Id. ¶ 1.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:13-cv-07862-CAS-(JGx) | Date | July 21, 2014 |
|---|---|---|---|
| Title | SPRINT SOLUTIONS INC, ET AL. V. PACIFIC CELLUPAGE INC., ET AL. | | |

need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-cv-07862-CAS-(JGx) | Date | July 21, 2014 |
|---|---|---|---|
| Title | SPRINT SOLUTIONS INC, ET AL. V. PACIFIC CELLUPAGE INC., ET AL. | | |

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.    DISCUSSION

"Congress enacted the CFAA in 1984 primarily to address the growing problem of computer hacking." United States v. Nosal, 676 F.3d 854, 858 (9th Cir. 2012). The CFAA proscribes a broad range of computer-related conduct, "the majority of which involve[s] accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1131 (9th Cir. 2009) (citing 18 U.S.C. § 1030(a)). The CFAA further provides that "[a]ny person who suffers damage or loss by reason of a violation" of the CFAA, may bring an action for compensatory damages and injunctive relief, provided that the conduct involves one of several factors. Id. § 1030(g). The only factor relevant to the present case is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." Id. § 1030(c)(4)(A)(i)(I).

Sprint asserts three claims for violation of the CFAA. These claims are for: (1) accessing a computer "knowingly and with intent to defraud," and without authorization, 18 U.S.C. § 1030(a)(4); (2) "intentionally access[ing] a . . . computer without authorization, and as a result of such conduct, caus[ing] damage and loss," id. § 1030(a)(5)(C); and (3) "traffic[king] in any password or similar information through which a computer may be accessed without authorization," id. § 1030(a)(6). SAC ¶¶ 123-72. The CFAA defines "traffic" as "transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of." 18 U.S.C. § 1029(e)(5).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-07862-CAS-(JGx) | Date | July 21, 2014 |
| Title | SPRINT SOLUTIONS INC, ET AL. V. PACIFIC CELLUPAGE INC., ET AL. | | |

      The crux of Sprint's "unauthorized access" claims is that Sprint's mobile phones are "connected to and activated on Sprint's protected computer networks when purchased from Sprint," and that defendants, in the process of "unlocking" Sprint's mobile phones for use on other wireless networks, use "confidential codes [and] passwords to hack into and gain . . . access" to those computer networks. SAC ¶¶ 141-45.[2] Similarly, the substance of Sprint's "trafficking" claim is that the Bulk Handset Trafficking Scheme involves trafficking in Sprint mobile phones, which are "loaded with confidential codes [and] passwords that access" Sprint's computer networks. Id. ¶ 124. Additionally, Sprint alleges that defendants "share these confidential codes [and] passwords . . . among themselves and with their co-conspirators." Id. ¶ 127.

      Defendants argue that Sprint's CFAA claims fail because the SAC does not adequately allege the element of "loss." See 18 U.S.C. § 1030(e)(11). "Loss" is defined as follows:

> [A]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue

---

[2] It is not abundantly clear from defendants' moving papers whether they are directly challenging the adequacy of the SAC's allegations of unauthorized access and trafficking in passwords, or whether defendants only intend to challenge the SAC's allegations of "loss." To the extent that defendants intend to challenge the SAC's allegations of "unauthorized access" and "trafficking in computer passwords," the Court finds that the SAC's allegations are sufficient. This is so because, the SAC alleges that unlocking a Sprint mobile phone involves "hack[ing[ into and gain[ing] . . . access" to Sprint's computer networks, and that the process of trafficking in Sprint mobile phones includes sharing among defendants and their co-conspirators of the "confidential codes [and] passwords" stored on the phones, which are used to access Sprint's computer networks. SAC ¶¶ 124, 127, 141-45. Further probing of the sufficiency of Sprint's contentions regarding these claims is more prudently conducted on a motion for summary judgment or at trial, with the benefit of a more fully developed evidentiary record.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:13-cv-07862-CAS-(JGx) | Date | July 21, 2014 |
|---|---|---|---|
| Title | SPRINT SOLUTIONS INC, ET AL. V. PACIFIC CELLUPAGE INC., ET AL. | | |

lost, cost incurred, or other consequential damages incurred because of interruption of service.

Id. The SAC alleges the following regarding loss in support of its claim for trafficking in computer passwords:

> With respect to loss, Sprint has lost subsidy investments and spent well in excess of $5,000 responding to Defendants' contacts with Sprint customer service, investigating and assessing the possible impairment to the integrity of its protected computer networks, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones and codes/passwords, as well as tracking down fraudulently sold Phones.

SAC ¶ 134. The SAC contains similar, but not identical, allegations of loss in support of Sprint's "unauthorized access" claims:

> With respect to loss, Sprint has lost subsidy investments in the trafficked Phones and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones.

SAC ¶¶ 151, 168. Defendants challenge the sufficiency of these allegations on two grounds. The Court addresses each in turn.

First, defendants argue that the SAC fails to adequately allege loss because items such as "lost subsidy investments in the trafficked Phones," SAC ¶¶ 151, 168, "responding to Defendants' with Sprint customer service," id. ¶ 134, and "tracking down fraudulently sold phones," id. ¶¶ 134, 151, 168, bear too tenuous a relationship to a computer system to be cognizable as "loss" as defined by the CFAA. The Court agrees.

The Ninth Circuit has cautioned against interpreting the CFAA in a manner that would "transform [it] from an anti-hacking statute in an expansive misappropriation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-07862-CAS-(JGx) | Date | July 21, 2014 |
| Title | SPRINT SOLUTIONS INC, ET AL. V. PACIFIC CELLUPAGE INC., ET AL. | | |

statute." See Nosal, 676 F.3d at 857. Consistent with this premise, district courts in the Ninth Circuit and other circuits have found that "costs associated with investigating intrusions into a computer network and taking subsequent remedial measures are losses within the meaning of the statute." Multiven, Inc. v. Cisco Systems, Inc., 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010); see also Atpac, Inc. v. Aptitude Solutions, Inc., 730 F. Supp. 2d 1174, 1184 (E.D. Cal. 2010) (finding that loss includes "the costs associated with assessing a hacked system for damage [and] upgrading a system's defenses to prevent future unauthorized access" (citing Doyle v. Taylor, 2010 WL 2163521, at *3 (E.D. Wash. May 24, 2010))).

By contrast, costs that are only distantly related to intrusions into a computer network are not losses under the CFAA. Doyle, 2010 WL 2163521, at *3 (citing SKF USA, Inc. v. Bjerkness, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009) for the proposition that "[c]osts not related to computer impairment or computer damages are not compensable under the CFAA"). Thus, "[p]urely economic harm unrelated to . . . computer systems is not" a loss under the CFAA. SKF USA, 636 F. Supp. 2d at 721 (finding that allegations that the plaintiff's "business was harmed" were not sufficient to allege loss under the CFAA); see also Mintz v. Mark Bartelstein and Assocs., 906 F. Supp. 2d 1017, 1030-31 (C.D. Cal. 2012) (finding that litigation costs did not constitute "loss"); Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 476-77 (S.D.N.Y. 2004), aff'd 169 Fed. Appx. 559 (2d Cir. Feb. 13, 2006) (finding that travel expenses incurred by executives of the plaintiff company to investigate the "business loss associated with the misappropriation" did not constitute "loss").

Here, the only allegations of costs that are related to Sprint's computer networks, thereby qualifying as losses under the CFAA are: (1) the allegation that Sprint has incurred expenses "investigating and assessing the possible impairment to the integrity of its protected computer networks," SAC ¶ 134, (2) the allegation that Sprint "conduct[ed] a damage assessment regarding Defendants' collection and dissemination of . . . codes/passwords," id., and (3) the allegation that Sprint incurred expenses "investigating and assessing the possible impairment to the integrity of its protected computer systems,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:13-cv-07862-CAS-(JGx) | Date | July 21, 2014 |
|---|---|---|---|
| Title | SPRINT SOLUTIONS INC, ET AL. V. PACIFIC CELLUPAGE INC., ET AL. | | |

id. ¶¶ 151, 168.[3] The remaining allegations of loss, such as Sprint's allegation that it incurred expenses "responding to Defendants' contacts with Sprint customer service" represent allegations of "business loss," which is not a cognizable loss under the CFAA. See Nexans Wires, 319 F. Supp. 2d at 476-77.[4]

Since, in this instance, the CFAA requires that Sprint allege "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value," 18 U.S.C. § 1030(c)(4)(A)(i)(I), the Court finds that Sprint's CFAA claims should be dismissed with leave to amend to give Sprint the opportunity to allege that it incurred a loss "during any 1-year period . . . aggregating at least $5,000 in value" solely based on costs that are cognizable as losses under the CFAA, namely, costs arising directly from conducting damage assessments and other investigations of possible impairment to the integrity of Sprint's computer networks. Currently, the SAC alleges that Sprint has "spent well in excess of $5,000," but then proceeds to reference a series of costs, some of which are cognizable losses under the CFAA, and some that are not. As a result, the SAC does not unambiguously allege cognizable loss under the CFAA that exceeds $5,000.[5]

---

[3] At oral argument, Sprint noted that the CFAA's definition of loss is a non-exhaustive list. Sprint argued that, as a result, the Court should find that all of the SAC's allegations of loss fall within the CFAA's definition. While Sprint is correct that the CFAA's loss definition begins with "any reasonable cost to any victim," Ninth Circuit law is clear that these "reasonable cost[s]" must be closely tied to a claimant's computer system, rather than a claimant's business model more generally. It is for that reason that the Court rejects several of Sprint's allegations of loss.

[4] The SAC also alleges that Sprint suffered a loss as a result of "taking action to counteract Defendants' theft." SAC ¶¶ 134, 151, 168. It is unclear what "theft" is being referenced, and it is therefore not possible for the Court to determine if this allegation falls within the ambit of a compensable loss under the CFAA, or if it represents a loss to Sprint's business more generally.

[5] Sprint relies on Farmers Insurance Exchange v. Steele Insurance Agency, 2013 WL 6070488, at *11 (E.D. Cal. Nov. 14, 2013), in support of its contention that the SAC's allegations of loss are sufficient as currently pled. However, Farmers says nothing to suggest that general business losses are compensable under the CFAA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-cv-07862-CAS-(JGx) | Date | July 21, 2014 |
|---|---|---|---|
| Title | SPRINT SOLUTIONS INC, ET AL. V. PACIFIC CELLUPAGE INC., ET AL. | | |

Defendants next argue that Sprint fails to allege loss because the SAC does not allege Sprint's computer systems have incurred any impairment or damage.  Under defendants' interpretation of the CFAA, loss allegations related to "conducting a damage assessment," see 18 U.S.C. § 1030(e)(11), are insufficient unless a CFAA claimant also alleges that impairment or damage to a computer system actually occurred.  This argument fails because the SAC alleges that such impairment or damage occurred.  See SAC ¶ 135 ("Defendants have substantially impaired the integrity of Sprint's protected computer networks . . . ."); id. ¶ 152 ("Defendants have substantially impaired the integrity of Sprint's systems . . . ."); id. ¶ 169 (same as SAC ¶ 152).  Taking these allegations as true, as the Court must when considering a Rule 12(b)(6) motion, the Court finds that the SAC adequately alleges that Sprint's computer networks and systems were impaired as a result of defendants' conduct.[6]  Defendants resist this conclusion on the grounds that "impaired integrity" is not the same as "impaired."  This argument raises issues of technical terminology and expertise that are not suitable for resolution on a 12(b)(6) motion.  Rather, this argument is better addressed on a motion for summary judgment or at trial.

---

Indeed, in discussing loss, the Farmers court relies on many of the same cases cited herein, which have found that "loss" under the CFAA is confined to costs directly associated with data, a computer system, or a computer network.

[6] Since the Court finds that the SAC adequately alleges that Sprint's networks and systems were impaired by defendants' conduct, the Court need not address whether it is possible for a CFAA claimant to allege a "loss" even when no computer system has suffered impairment or damage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL  'O'

| Case No. | 2:13-cv-07862-CAS-(JGx) | Date | July 21, 2014 |
|---|---|---|---|
| Title | SPRINT SOLUTIONS INC, ET AL. V. PACIFIC CELLUPAGE INC., ET AL. | | |

## V. CONCLUSION

In accordance with the foregoing, defendants' motion to dismiss is hereby GRANTED. Sprint shall have leave to file an amended complaint, no later than **August 18, 2014**, that addresses the deficiencies identified in the SAC's allegations of "loss" under the CFAA. Sprint shall not add claims not present in the SAC.

IT IS SO ORDERED.

|  |  | 00 | : | 08 |
|---|---|---|---|---|
|  | Initials of Preparer |  | CMJ |  |